(161 App. Div. 414)

## WEEKS v. DOMINY et al.

(Supreme Court, Appellate Division, Second Department. March 20, 1914.)

1. EVIDENCE (§ 336*)—CONVEYANCES—SEALS.

Where the testimonium of a conveyance by a municipal corporation recited the affixing of the corporate seal and that the deed was subscribed by the president of the board of trustees, the deed is admissible in evidence, if duly sealed, even though it was subscribed by one describing himself as clerk; the seal being evidence of corporate action.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1279–1282; Dec. Dig. § 336.*]

2. DEEDS (§ 8*)—INTEREST CONVEYED—TITLE OF GRANTOR.

A conveyance by a stranger to the title who did not even have possession passes nothing.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 13–18, 408–412; Dec. Dig. § 8.*]

3. APPEAL AND ERROR (§ 837*)—PLEADING—CONVEYANCES.

In a suit involving the right to land, a conveyance to defendant's ancestors, which was not specifically pleaded, and was not properly proven, may be disregarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3272, 3274–3277, 3289; Dec. Dig. § 837.*]

4. ADVERSE POSSESSION (§ 24*)—WHAT CONSTITUTES.

The charter to a municipality granted it certain land together with all havens, harbors, creeks, marshes, waters, lakes, rivers, fishing, and all other profits. The inhabitants of the municipality used a sandy beach to dry their nets when fishing, and frequently built small shacks on the beach, occupying them for short periods of time. *Held*, that such possession as this did not ripen into an adverse title against the town, particularly where claimant's ancestors who erected a cabin recognized the paramount title of the town by participating as town trustee in leases of parts of the land.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 114, 115; Dec. Dig. § 24.*]

5. QUIETING TITLE (§ 10*)—RIGHT TO MAINTAIN.

A party's possession of land under color of title warrants him in maintaining a suit to quiet his title.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 36–42; Dec. Dig. § 10.*]

Appeal from Special Term, Suffolk County.

Action by Herbert A. Weeks against Henry Dominy, Felix Dominy and others. From a judgment for plaintiff and an order denying their motion to present certain testimony, the defendants named appeal. Affirmed.

See, also, 142 App. Div. 909, 126 N. Y. Supp. 1150.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLETON, and PUTNAM, JJ.

Nicholas J. O'Connell, of New York City, for appellants.

Lynn C. Norris, of Brooklyn, for respondent.

PUTNAM, J. On May 18, 1909, Mr. Willard N. Baylis bought about 941 acres of wild land on Napeague Beach, lying on both sides

of the Long Island Railroad; the tract extending from Gardiner's Bay south to the Atlantic Ocean. It was mostly sand dunes, with beach grass, marshlands, and some scattering cedar bushes, with low bogs, having wild cranberries. The conveyance excepts the right of the public in highways, also the rights conveyed to the Montauk Extension Railroad Company, and the rights granted to the United States (for the life saving station), and then significantly excepts:

"(4) Rights of the inhabitants of the town of Easthampton to. land fish, boats and nets, to spread nets on the adjacent sands, and care for the fish and material, on the south shore of the said described premises, if any such they have."

Mr. Baylis, with his wife, conveyed 100 acres out of this tract to he present plaintiff, a real estate operator, by deed dated May 20th, recorded May 21, 1909.

Mr. Weeks organized the H. A. Weeks Company, and filed in the county clerk's office a map called "Easthampton Beach," all subdivided into building lots except the portion at the easterly end, occupied as a life saving station.

After he had contracted for sale of several lots, on August 17, 1909, the attorney for Messrs. Dominy made a written claim of ownership of the land in question. Henry Dominy then began an action against Mr. Weeks, Willard N. Baylis, and the Long Island Railroad, in which he sued for himself and also for the benefit of all other heirs of Hydreda Dominy, deceased. Since many of such heirs were without the state and did not join as plaintiffs, on May 24, 1910, Mr. Weeks brought the present action, in order, through service by publication, to obtain jurisdiction over all these dispersed heirs. Jurisdiction over the interests of these absentees being acquired through this cross-suit, Mr. Dominy's action was stayed to await the result of the Weeks' suit. 142 App. Div. 909, 126 N. Y. Supp. 1150.

A trial at Special Term of the case at bar resulted in a decree for plaintiff, from which the defendants Dominy have appealed.

Plaintiff's title to the 100 acres here in question is deduced through a written chain starting from the colonial charter granted in 1686 by Col. Dongan as colonial governor to the freeholders and inhabitants of the town of Easthampton, followed by a conveyance on March 15, 1882, by the trustees of the freeholders of Easthampton to Arthur W. Benson, recorded October 25, 1882.

[1] An objection was made to the acknowledgment in this deed of the town trustees. The testimonium recited affixing the corporate seal and that these presents are subscribed by their president. It was subscribed by "Sineus C. M. Talmage, Clerk of the Trustees." The acknowledgment again referred to Mr. Talmage as president of the trustees. As the corporate seal was affixed in proper form, the court properly overruled this objection, as the evidence of corporate action is the seal. Trustees of Can. Academy v. McKechnie, 90 N. Y. 618; People's Bank v. St. Anthony's R. C. Church, 109 N. Y. 512, 525, 17 N. E. 408.

Except as impaired by the effect of the alleged adverse occupancy of the Dominy family, plaintiff's chain of title seems complete. By

146 N.Y.S.—40

line of recorded conveyances he showed a prima facie title from the sovereign.

[2] The Dominy title is claimed from three sources: An alleged deed from Gardiner Miller to Nathaniel Dominy (Clockmaker Dominy), dated March 10, 1795, recorded August 15, 1881; an alleged deed from trustees of Easthampton to Nathaniel Dominy in 1798 (but not specifically pleaded); and title by prescription from continued occupancy for over 20 years.

The deed purporting to come from Gardiner Miller, unrecorded for 86 years, is from a person whose connection with the lands is unknown. Such a deed from a stranger to the title, and without any traditions of possession, conveyed nothing.

In view of the record title in the plaintiff, it is immaterial whether the deed purporting to be made by Gardiner Miller to Nathaniel Dominy is genuine or was forged, since Miller was not shown to have had title, possession, or authority to convey. Gardner v. Heart, 1 N. Y. 528; Miller v. Long Island Railroad Co., 71 N. Y. 380. The findings respecting the authenticity of such deed are therefore immaterial to the legal conclusions. The refusal of the court to reopen the case to take further evidence as to this instrument also becomes unimportant in this view of that deed.

[3] The conveyance purporting to come from the town in 1798, which refers to an authority granted at a town meeting held April 7, 1795, was never acknowledged. The original was not produced. The town meeting of April 7, 1795, only shows authority to give a lease to Nathaniel Dominy of ten square feet adjoining his clockmaker's shop in the settled part of the town, far removed from this beach. As this conveyance was not pleaded and was not properly proved, it may be disregarded upon this appeal.

[4] Possession by the Dominys is therefore the crux of the whole case. This land before the last 20 years was obviously of slight value. It was occupied in connection with fishing. The Dominys were not the only ones there who, in the fishing season, put up shacks, spread their nets, perhaps picked wild cranberries, and sometimes cut down dead trees for fuel. The general legal rules as to such occupation of wild and waste lands lying inland are reviewed in Wiechers v. McCormick, 122 App. Div. 860, 107 N. Y. Supp. 835. But rights of fishing participated in by the freeholders of the town are even less exclusive. The Dongan charter especially conferred rights over the fisheries. Such rights apparently would be commonable to all the townspeople (Trustees of East Hampton v. Kirk, 68 N. Y. 459), at least until the local authorities by proper corporate action should restrict or convey them. The charter granted these rights by the following habendum:

"Together with all Havens Harbors Creeks Quarryes Woodlands Meadows Pastures Marshes Waters Lakes Rivers ffishing Hawking Hunting & fowling & all other Proffitts Commodityes Emoluments & Hereditaments," etc.

In salt water fishing along such an uninhabited shore, the gear had to have some place of storage, so that putting up tents and then shacks naturally followed. Such small buildings, located there by the

Dominys and by others, were not homes. They did not amount to the kind of habitations, the occupancy of which carries with it also legal possession of the adjoining waste and uninclosed pieces of land that may be held under the same title and used in connection therewith. It is rather like a deer shanty or hunting camp used by the guides in the North Woods. People ex rel. Marsh v. Campbell, 67 Hun, 590, 22 N. Y. Supp. 458. These shore huts at Napeague only carried out a right incidental to fishing; to house the gear, to cure and store the fish taken, and to sleep there during the season. An extension of the public fishing right so as to allow small buildings to be put up by the shores and beaches, the Roman law recognized. It was part of that policy which subjected the seashore to public uses of much wider extent than did the law of England. Thus the Institutes of Justinian declared:

"The use of the seashore, as well as of the sea, is also public by the law cof nations; and therefore any person may erect a cabin" (casam ibi ponere) "upon it, to which he may resort to dry his nets, and haul them from the water." Lib. 11, tit. 1, § 5.

Such extensive shore rights did not ordinarily appertain to fishing in England or in this country—at least excepting Louisiana. Morgan v. Nagodish, 40 La. Ann. 246, 3 South. 636. But the freeholders of a town like Easthampton, enjoying such rights of fishing, may have well exercised upon the common beaches or seashore those special rights, as inhabitants of that town, to fish, to haul and dry their nets, and to erect huts to contain their catch and the gear therefor, as they also did to take seaweed from the beeches. Trustees of East Hampton v. Kirk, supra. The facts that these huts were somewhat inland of the shore proper, that during the fishing season the fishermen passed nights there in sleeping bunks, that they gathered seaweed, or sank empty barrels to get water in the sandy hollows, and had fish pools— all these incidents did not make their occupation other than temporary, and merely as an accessory to fishing. In the words of Austin, these shore rights are part of those res publicæ "which the state permits its subjects generally to use or deal with in certain limited and evanescent modes." Jurisp. vol. 2, § 1088. Furthermore, this occupation of the fishing huts was not exclusive, because lacking the intent on the part of the casual occupant to appropriate the site to himself—"animus rem sibi habendi"—and were not inconsistent with like rights of other town freeholders.

Hence the idea of exclusive possession by the Dominy family is colored by attempts to give their occupation a greater dignity than it possessed. The defendants' acts are to be looked upon as they actually were, in the circumstances attending the situation and in the light that the disputed acts were viewed by other fishermen, and by other temporary occupants of this beach. And such evidence is far short of proving open, notorious and continued acts of ownership.

[5] Here the decisive circumstances are the dominion by the trustees of the freeholders of Easthampton over this common land, with the power of granting leases, of disposal of grass growing in spots— all which rights had been long exercised and are matters of record of

the town meetings. Such acts not only constructively affected all the inhabitants, but are binding directly upon these Dominy heirs, whose ancestor was himself a town officer, participating in such corporate acts, even entering official minutes of them in the town records in his own handwriting—a participation and acquiescence which are inconsistent with the present claim of adverse title and possession. Trustees of Brookhaven v. Strong, 60 N. Y. 56. Plaintiff's possession under the conveyance to him of May 20, 1909, was sufficient to entitle him to maintain this action.

It follows that the findings of fact numbered 39, 40, 41, and 42, as to the forgery of the deed alleged to have been given by Gardiner Miller, being immaterial to the conclusions of law, should be stricken out; otherwise that the decision of the learned Special Term and the judgment and order entered thereon should be affirmed, with costs to the respondent Weeks. All concur.