# EUGENE MURPHY *v.* H. R. HITCHCOCK AND O. TOLLEFSEN.

## APPEAL FROM DISTRICT MAGISTRATE OF MOLOKAI.

SUBMITTED JULY 13, 1915.  DECIDED JULY 19, 1915.

### ROBERTSON, C.J., WATSON AND QUARLES, JJ.

FISH—*ownership of when confined.*

Where one catches fish in public waters and confines them in a private pond having no outlet to public waters, he becomes the owner of such fish and may recover their value from another wrongfully taking them from his possession.

EXECUTION—*sale of leasehold interest in pond—fish.*

Fish in a private pond, unconnected with public waters, do not pass by sale of a leasehold interest in the pond made under execution, the levy and notice of sale being silent as to the fish, and the execution defendant being admitted to be the owner of the fish at the time of the levy and sale.

OPINION OF THE COURT BY QUARLES, J.

The plaintiff commenced an action in the district court of Molokai to recover from the defendants $165, the alleged value of certain fish alleged to have been taken by the defendants from a fish pond called "Kupeke" in December, 1914, alleged to be the property of the plaintiff. The cause was submitted on an agreed statement of facts in writing, wherein it is agreed as follows:

"1. That on the 4th day of November A. D. 1914 judgment was rendered in favor of one Otomatsu Kanayama and against one Akutagawa for the sum of 676.82.

"2. That at the time of the rendition of the judgment the defendant Akutagawa was the holder of a lease on a pond known as 'Fish Pond of Kupeke.'

"3. That the said pond of Kupeke is a pond enclosed from the sea and into an from which fish cannot enter nor leave, and is used for the purpose of raising pond mullet for the market.

"4. That the Sheriff of the County of Maui in furtherance of the judgment mentioned in paragraph '1' levied on, among other property the leasehold for the said 'Fish Pond of Kupeke'

"5. That the said leasehold in which the said 'Fish Pond of Kupeke' is situated was sold at public auction on the 12th day of December A. D. 1914 to Otomatsu Kanayama, and that the defendants claim under that sale and claim that the sale of the leasehold conveyed all the fish in the 'Fish Pond of Kupeke'

"6. That on the 12th day of December A. D. 1914, and shortly after the sale of the leasehold by the sheriff the plaintiff herein purchased all the fish in the said 'Fish Pond of Kupeke' from Akutagawa, who was acknowledged to be the owner thereof, except for the levy and sale of the leasehold.

"7. That the defendants herein knew that the plaintiff herein claimed to be the owner of the fish in the said 'Fish Pond of Kupeke' and were present when plaintiff purchased and paid for the same to Akutagawa.

"8. That the defendants herein claiming to have acquired all the fish under the sale of the said leasehold of the said 'Fish Pond of Kupeke' removed therefrom fish of the value of $75.00.

"That as a part of this submission of facts, the original lease

from Mrs. Buchanan to Akutagawa, and papers in the case, of Omoatsu Kanayama vs Akutagawa as follows:

"1. Sheriffs notice of sale

"2. Sheriffs bill of sale

"3. Bill of sale from Akutagawa to Eugene Murphy, purporting to· convey the fish in the 'Fish Pond of Kupeke.' "

The district magistrate decided in favor of the defendants and from the judgment the plaintiff has appealed directly to this court upon points of law set forth in his appeal as follows:

"1. That the court erred in rendering judgment for the defendants herein.

"2. That the court erred in holding that the fish in the pond passed to the purchaser of the leasehold at the sale thereof by the sheriff.

"3. That the court erred in holding that the purchase of the fish in the fish pond from the owner thereof did not pass title to said purchaser.

"4. That the court erred in holding that the sheriff could pass title in the fish pond herein involved without selling or levying on the same and giving notice that he offered said fish in the fish pond for sale."

The lease of the pond under which plaintiff's vendor held was made a part of the agreed statement of facts. Said lease runs for a term of five years, but says nothing about fish in the pond and contains no condition as to the growing or removal of fish in or from the pond. The levy and sale under execution was upon the leasehold estate of Akutagawa only. No levy upon the fish in the pond, or sale thereof, as personal property or otherwise is shown to have been made by the sheriff under the execution. The only question before us for determination is, did the levy and sale of the leasehold carry with it the ownership or title to the fish in the pond? If it did, the judgment of the district magistrate is correct. If it did not, the judgment is erroneous, and under the stipulated facts judgment should have been entered in favor of the plaintiff for $75 and costs.

Fish in public waters, like animals *ferae naturae,* belong to the public, in which individuals, as such, have no property interests so long as such fish are in public waters. However, when one captures fish in the public waters and confines them in a private pond, disconnected from the public waters, he acquires an absolute property in them, subject to be divested only by their escape, and another taking them from his possession is liable to him for their value. It is true that fish in a pond, although confined and subjected to the dominion of the one exercising dominion over the pond, are in their natural element. Fish are incapable of existing out of water. This, however, does not make them appurtenant to the pond or place wherein they may be confined, as they may be removed from such pond or other waters without injury to the pond where first confined. And so of animals, wild by nature, confined in a park or close where they find grass and other vegetation upon which to feed, but which they may find elsewhere when removed. The leasehold in question is analogous to a leasehold of a house for mercantile purposes, in which the lessee conducts a store. His stock of merchandise does not become appurtenant to the house or lands upon which situated nor is it appurtenant to his leasehold interest in the realty, and consequently does not pass with such leasehold under an execution sale of the leasehold. In such case the merchant leases the building for certain uses, that is, a place to keep his goods for sale. In case of a levy of an execution upon his leasehold interest, and sale thereof, nothing being said about his stock of merchandise in the building leased, it could not well be contended that such levy and sale carries with it, *ipso facto,* the stock of goods in the building, or that the execution defendant might not within a reasonable time after such sale remove his goods. In the case at bar the pond was leased for certain uses, "the raising of pond mullet for the market." One of the agreed facts is that the lessee who sold the fish to plaintiff "was acknowledged to be the owner thereof, except for the levy and sale." This stipulation negatives the idea that the

fish were in the pond at the time of the execution of the lease, as otherwise the lessor would have been the owner of the fish, subject only to the right of the lessee to take the same under his lease (19 Cyc. 989, 990). The natural inference from the agreed facts is that plaintiff's vendor caught the fish and placed them in the pond for the purpose of growing them for market. It is well established that no personal property passes under an execution sale unless it was seized in levying an execution, actually or constructively, under a levy of such execution, and without such seizure a sale under execution does not pass title to the property attempted to be sold under the execution (*Ferry* v. *Hakalau Plantation Co.,* 21 Haw. 745). At the common law a leasehold interest was regarded as a chattel, and a levy of an execution upon the leasehold was required to be made as upon other chattels with the exception that the officer making the levy need not take actual possession of the property leased (Freeman on Executions, 3rd ed., §119; 11 Am. & Eng. Ency. L., 2nd ed., p. 653, note and authorities cited; 17 Cyc. 953, and authorities cited in note 50; 8 Ency. Pl. & Pr. p. 550).

In the case at bar the levy was upon the leasehold and no mention whatever was made of the fish in the levy, notice of sale, or sheriff's bill of sale, all of which merely described the lease of the fish pond. We are of opinion that the execution sale did not pass the title to the fish any more than an execution sale of a peddler's cart would pass the title to goods and wares in the cart not mentioned in the levy, notice and certificate of sale. We think the conclusion inevitable that the fish in the pond did not pass with the execution sale of the leasehold. The fact that mullet in ponds having no outlet to the sea will not propagate is so well known that the court takes judicial notice of such fact. Such ponds are used for the purpose of growing mullet which are taken in the sea while young. The fish are thus reclaimed and become private property, and as such the owner thereof is protected in his usufruct. It is not a privilege of fishing or taking fish from a pond that was granted by the

lease in question, but an estate for years in the realty, and in this particular the case at bar is unlike those cases where a right of fishery is an appurtenant or an easement to an estate in land, absolute or limited, and, as such, necessarily passes with the dominant estate. A grant or license to take fish from private owners is not uncommon, and, by custom, rights of fishery may be appurtenant to an estate in lands. A case that has frequently occurred is where a riparian owner leases lands through which a non-navigable stream runs, the lease carrying with it the exclusive right of fishery belonging to the riparian owner unless there is in the lease a reservation of such right to the lessor. The reported cases involving the question whether the right to take fish passes with the lease of lands apply to cases where the fish propagate in the waters upon said lands and not to a case like the one at bar where the pond is used for the purpose of growing fish caught in the sea.

We are of opinion that under the agreed statement of facts that the fish in the pond leased to the vendor of plaintiff did not pass by the execution sale and that the judgment should have been in favor of the plaintiff for $75, the agreed value of the fish appropriated by the defendants.

In arriving at this conclusion we do not desire to be understood as holding that plaintiff was not under the duty of removing the fish from the pond within a reasonable time—with reasonable promptness—after the execution sale, or as holding that he could burden the purchaser at such sale with the keeping of the fish in the pond. Under the agreed facts the defendants took the said fish from the pond within a period of from one to nineteen days, and we are unable to say that the plaintiff abandoned the fish and thereby lost title.

The judgment is reversed and the cause remanded to the district court of Molokai with instructions to enter a judgment in favor of the plaintiff for the sum of $75 and costs.

E. Murphy for plaintiff.

D. H. Case and E. Vincent for defendants.