(173 App. Div. 719)

SPRING et al. v. CONKLIN et al.

(Supreme Court, Appellate Division, Second Department. June 29, 1916.)

1. FISH ⟨5(1)—RIGHT OF FISHING—HUTS ON SHORE.
   A right of fishing on a shore does not include the right to erect huts on the shore for fishermen.

   [Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 11, 12; Dec. Dig. ⟨5(1).]

2. EJECTMENT ⟨110—INSTRUCTIONS—APPLICABILITY.
   In ejectment to remove fishermen's huts, the defense being a right to maintain them on a shore under a deed reserving to town inhabitants the right to fish on the shore, to cast, spread nets, and use the shore "as they always have done and is now practiced upon the shore west of the said tract," a requested instruction that if the inhabitants of the town, at the time said deed was given, were using the shore so conveyed, or the shore west of said tract, by erecting houses thereon for fishing and other similar purposes, defendants would have such right, is properly refused, since the test proposed thereby is the use of the shore when the deed was given, instead of prior usage also, and usage on the shore conveyed alone, instead of together with the usage on the shore to the west.

   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 319–326; Dec. Dig. ⟨110.]

3. EJECTMENT ⟨110—INSTRUCTIONS—APPLICABILITY.
   In such action, it was not error to refuse to instruct that the occupation of the huts shown was only temporary, since the right in dispute was not the occupancy of the structures, but the right to maintain them.

   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 319–326; Dec. Dig. ⟨110.]

⟨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. DEEDS ⚖⇒143—CONSTRUCTION—RESERVATIONS.**
　　Where a reservation in a deed passing grantor's entire title creates no new rights, the grantee has the same rights as his grantor.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 453–455, 465–468; Dec. Dig. ⚖⇒143.]

Appeal from Trial Term, Suffolk County.

Action by Royce R. Spring and another against Harry T. Conklin and others. From a judgment for plaintiffs, and an order denying their motion for a new trial, defendants appeal. Affirmed.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH, and PUTNAM, JJ.

W. H. Gilpatric, of New York City, for appellants.

Robert Ramsey, of New York City (J. De R. Storey, of New York City, on the brief), for respondents.

JENKS, P. J. [1] The defendants in this ejectment suit appeal from a judgment upon the verdict against them. They maintained certain structures on the ocean shore of plaintiffs' lands in the town of East Hampton. These lands were conveyed in 1881 by the trustees of that town to plaintiffs' predecessor. The defendants assert their rights as inhabitants of the town perforce of a reservation in the said conveyance that reads as follows:

"And reserving from the sale of said tract the right of the inhabitants of the town of East Hampton to fish upon the shore, to cart, spread nets, leave their boats, and use said shore as they always have done and is now practiced upon the shore west of said tract, in said town."

These structures are permanent in character and embrace small habitations, boathouses, sheds for storing, packing and shipping fish, for shelter of horses, an engine house for hauling boats, and outhouses. At the trial the plaintiffs disclaimed any purpose to exclude the public from passing over the shore, spreading nets, hauling boats, or like doings, and challenged only the right to set up and to maintain these structures. As such structures are permanent, the defendants' contention involves an assertion of exclusive power over the lands upon which these structures stand. Such power is not to be implied from the right of fishing. Cortelyou v. Van Brundt, 2 Johns. 357, 3 Am. Dec. 439. Angell on Tide Waters, p. 194, citing this case, says:

"The right of landing with, and drawing, seines upon another's land, is undoubtedly an easement, and therefore, as in the case just above referred to, may be acquired by prescription, like a right of way. Such, however, is not the case with the erection of a building on the land of a riparian proprietor, like a fishing hut, for that is an exclusive appropriation of the land."

He also says:

"Upon this subject the common law is at variance with the civil law, for by the latter any individual had permission to erect a fishing hut on the shore to subserve the purpose of fishing—'cuilibet liberum est casam ibi ponere in quam se recipiat.' "

See, too, the opinion of my Brother Putnam for the court in Weeks v. Dominy, 161 App. Div. 417–418, 146 N. Y. Supp. 624; Farnham

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on Waters and Water Rights, §§ 143a, 394; 14 Lord Halsbury's Laws of England, p. 575.

The defendants, however, sought to justify such occupations by proof of usage, and contended that the expression of the reservation, "and use said shore as they always have done and is now practiced upon the shore west of said tract, in said town," should be construed as if it read "erecting and maintaining buildings for use in fishing and other similar purposes," with insistence that the structures in question were within the language of the reservation. And they offered evidence in support of such contention, under the principle stated in Onthank v. L. S. & M. S. R. R. Co., 71 N. Y. 194–197, 27 Am. Rep. 35, and in Stephens v. N. Y., O. & W. Ry. Co., 175 N. Y. 72–80, 67 N. E. 119.

After disposition of the various motions made at the close of the proof, the learned court declared that it would instruct the jury that the plaintiff had the right of possession subject to the general exception in the deed, and that the nature and extent of that exception were to be determined by them. This statement of the issue for submission was neither excepted to nor followed by any request for submission of any other issue. Thereupon the learned court submitted to the jury, as the sole question, whether by reason of this expression in the reservation of the deed, "and use said shore as they always have done and is now practiced upon the shore west of said tract, in said town," it was contemplated that the defendants "had the right to put up these houses or similar houses, to use for the storing of gearing, the packing of fish and the sleeping of the men."

[2, 3] Thus the only questions presented to us for review upon this record are whether the verdict was justified by the proof and whether there were any capital errors presented by the exceptions to the rulings upon the evidence or upon the requests for instructions. I think that the verdict cannot be disturbed. The proof as to usage was too slight and too vague for imputation that the verdict was wrong. The defendants but showed that there were seven huts or structures maintained by other inhabitants of the town for fishing purposes, and occupied by them respectively for living purposes during the fishing season. These structures were far distant from the lands in question. Of them, but two or three were in existence in 1881, and it was left undetermined, save perhaps in a single instance, whether the occupants were squatters or rent payers, or under what right or claim of right, by what sufferance or under what conditions they had been such occupants. Washburn on Easements and Servitudes (4th Ed.) p. 33, says:

"There are three ways of defeating a prescription—by showing it was enjoyed clandestinely, by violence, or by prescription of some one else."

There are no exceptions to the rulings upon the evidence which require comment. The defendants complain that the learned court erred in its ruling upon the following requests:

"(3) That if the inhabitants of the town of East Hampton at the time said deed was given by the trustees of the said town to said Lindley Spring, were using the shore of the tract of land so conveyed, or the shore west of said tract by erecting houses thereon for fishing and other similar purposes, then

under the public easement as granted by said deed, the future inhabitants of the town would have the right to occupy the shore of said land by erecting houses for fishing and other similar purposes."

The court ruled:

"I charge that with the qualification, if you find that they were lawfully erecting houses thereon prior to that time pursuant to this grant to the town which existed prior to this deed, then I will so charge; otherwise I refuse to so charge."

"(4) That if the jury find from the evidence that the buildings that are maintained by the defendants upon the shore of the property so conveyed to said Lindley Spring by the trustees of the town of East Hampton are similar in their occupancy and use to those used by the inhabitants of the town of East Hampton at the time said deed was made, either on the shore of said tract or on the shore west of said tract, and that such use is a reasonable use thereof, then their verdict must be for the defendants."

The court ruled:

"I charge that with the same qualification as I did before—that they must find that the prior use was a lawful use, not a trespass."

The criticism is that under such instructions the jury must have considered that they might determine whether the use of the shore before the deed in 1881, as testified to by the witnesses, was unlawful, whereas the evidence showed that such use and occupation was in no sense unlawful. In the first place, the first request was objectionable, in that it made as the test the use of the shore at the time of the deed in 1881 (while the language of the exception is "as they always have done and is now practiced"), and the use of the present land as well as that lying to the west. The court could have properly refused the instruction. These observations apply to the second instruction also. I think that the language of the learned court indicated that it meant, by "lawfully," an occupation pursuant to the consent or sufferance of the town, not a mere trespass. Thus, when the defendant excepted, and asked an instruction that there was no evidence that any of the parties shown as occupants were trespassers, the court said:

"I will say that I do not recall any evidence either way as to how they came to be there."

And the learned court in its charge made it sufficiently plain to the jury exactly what it intended by the expression "lawful." The refusal to charge that "these huts were somewhat inland of the shore, and that during the fishing season the fishermen passed nights there in sleeping bunks, does not make their occupation other than temporary," was not error. There was no claim of title by adverse possession. Moreover, the question presented was as to the right to set up and to maintain structures, which were permanent and thus appropriated the land upon which they stood, aside from the question whether the defendants occupied them continuously.

[4] There was no error in the following instruction, requested by the plaintiffs:

"If the trustees had the right to remove the whaleboat house shown to have been erected upon the property conveyed to Spring prior to their conveyance to Spring [plaintiffs' predecessor], then the present plaintiffs have also the right to have it removed."

For if the exception or reservation clause in the deed created no new rights, it follows that the grantee had rights similar to those of his grantors, the trustees, inasmuch as the deed passed their entire estate, save the rights which had vested in the inhabitants or the public.

I advise affirmance of the judgment and order, with costs. All concur.