HERRIN, RESPONDENT, *v.* SUTHERLAND, APPELLANT.

(No. 5,806.)

(Submitted October 26, 1925. Decided November 24, 1925.)

[241 Pac. 328.]

*Fish and Game—Navigable and Non-navigable Streams—Rights of Fishermen, Hunters and Land Owners Defined—Trespass —Common Law.*

Common Law—Rule of Decision—Definition.
  1. The common law of England declared by section 5672, Revised Codes of 1921, to be the rule of decision in Montana so far as it is not repugnant to the federal or state Constitution or the state laws, is that body of jurisprudence as applied and modified by the courts of this country up to the time it was made a rule of decision by the first Montana territorial legislature.
Fish and Game—What are Public Waters—Right to Fish and Hunt Wild Fowl Defined.
  2. The state is the owner of all land below the water of a navigable stream, and therefore the waters above the bed or channel of such a stream at low-water mark are public waters in which the

---

1. What the common law includes, see notes in Ann. Cas. 1913E, 1222; Ann. Cas. 1918A, 968.
2. Fishery rights in navigable waters, see note in 21 Ann. Cas. 777. See, also, 11 R. C. L. 1029.
Hunting rights on navigable waters, see notes in 15 Ann. Cas. 708; Ann. Cas. 1915C, 1152.

[74 Mont. 587.]

people have a right to fish, except as restrained by general law, and may shoot wild fowl upon the surface of the stream or flying thereover so long as they do not trespass upon the land of an adjacent owner.

Same—What Constitutes Trespass.

3. One who while hunting and fishing goes upon the land of an owner of land above ordinary water-mark on a navigable stream is guilty of a trespass.

Same—Fishing in Non-navigable Stream—When Trespass.

4. Fishing in a non-navigable stream the bed of which is privately owned without permission of the owner, or going upon the banks thereof and thus destroying grasses or willows, constitutes trespass, the owner of the land having the exclusive right to take the fish while in the waters of the stream within his land.

Same—Firing Shotgun Over Land of Another—Trespass.

5. Where one stands upon the land of another while hunting and fires a shotgun over the premises of a third, he interferes with the quiet, undisturbed and peaceful enjoyment thereof by the latter and is at least a technical trespasser.

Same—Hunting on Inclosed Land of Another—When Trespass.

6. Where land is inclosed a person who hunts thereon without the consent of one entitled to its possession is a trespasser, and where land is posted warning persons against hunting thereon, he who does so in disregard of such warning is subject to criminal prosecution under section 11482, Revised Codes of 1921.

Same—Exclusive Right to Fish and Hunt in Owner of Land.

7. The exclusive right of hunting or fishing on land owned by a private individual is in the owner of the land, or in those who do so by permission, as his guests, or by his grant.

Same—Public Domain Surrounded by Fenced Land of Private Owner—Duty of Person Desiring to Cross Land for Purpose of Hunting on Public Domain.

8. Where the public domain is surrounded by privately owned land which is fenced, rendering it impossible for a hunter to reach it without crossing the inclosed land, it is his duty to ask the owner to designate the way to be pursued by him across the land, and in failing to do so, but instead breaking the fence and crossing the land, he commits trespass.

Same—Fishing in Privately Owned Pond—Trespass.

9. One who enters upon private land to fish from a pond thereon and in a stream flowing therefrom is a trespasser, since the right to fish therein belongs exclusively to the owner.

Same—Wild Game not Subject to Private Dominion Except as Provided by Law.

10. The wild game belongs to the people of the state in their sovereign capacity and is not subject to private dominion to any greater extent than the legislature has seen fit to prescribe.

---

7. Right to fish or hunt on the lands of another, see note in 13 Am. St. Rep. 416.

9. Fishery rights in owners of streams and ponds, see note in 3 Ann. Cas. 860.

Trespass for interference with fishery rights, see note in 60 L. R. A. 523. See, also, 11 R. C. L. 1030.

10. On title to fish and game taken by trespasser, see note in 23 A. L. R. 1402.

[74 Mont. 587.]

**Same—Owner of Land has Qualified Ownership in Wild Fowl Protected and Fed by Him Thereon.**

11. Under section 6605, Revised Codes of 1921, an owner of land has a qualified ownership in wild fowl which were protected, fed and claimed by him thereon, and he alone has the right to hunt them while on his land; hence a trespasser has no right to kill or take them away.

---

Common Law, 12 C. J., sec. 2, p. 177, n. 18.

Fish, 26 C. J., sec. 8, p. 597, n. 54, 56; sec. 9, p. 598, n. 63, 66; sec. 17, p. 602, n. 19; sec. 20, p. 605, n. 50; sec. 52, p. 631, n. 57.

Game, 27 C. J., sec. 2, p. 942, n. 11, 12, 13; sec. 4, p. 943, n. 19; sec. 5, p. 943, n. 26; sec. 7, p. 944, n. 39, 42, 43; sec. 17, p. 953, n. 53, 55 New.

Navigable Waters, 29 Cyc., p. 332, n. 23; p. 356, n. 30 New.

Trespass, 38 Cyc., p. 995, n. 14; p. 996, n. 17; p. 997, n. 29; p. 1028, n. 21; p. 1051, n. 45.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

ACTION by H. J. Herrin against William Sutherland. Judgment for plaintiff and defendant appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. G. S. Frary,* for Appellant.

Citing: 12 R. C. L., p. 688, sec. 6; *Butler v. Attorney General,* 195 Mass. 79, 8 L. R. A. (n. s.) 1047, 80 N. E. 688; *Commonwealth v. Chappin,* 5 Pick. (Mass.) 199, 16 Am. Dec. 386; *Whittaker v. Stangvick,* 100 Minn. 386, 117 Am. St. Rep. 703, 10 Ann. Cas. 528, 10 L. R. A. (n. s.) 921, 111 N. W. 295; *Sterling v. Jackson,* 69 Mich. 488, 13 Am. St. Rep. 405, 37 N. W. 845; *Ohio Oil Co. v. Indiana,* 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. Rep. 585 [see, also, Rose's U. S. Notes]; 11 R. C. L., at p. 1017, and cases in note 11; *Sollers v. Sollers,* 77 Md. 148, 20 L. R. A. 94, 26 Atl. 188; *Amory v. Flyn,* 10 Johns. (N. Y.) 102, 6 Am. Dec. 316.

*Mr. E. G. Toomey,* for Respondent.

Citing: *Willow River Club v. Wade,* 100 Wis. 86, 42 L. R. A. 305, 76 N. W. 273; *Hartman v. Tresise,* 36 Colo. 146, 4 L. R. A. (n. s.) 872, 84 Pac. 685; 1 Tiffany on Real Property, 2d ed.,

sec. 309; *Fay* v. *Salem etc. Aqueduct Co.*, 111 Mass. 27; *Spring* v. *Conklin*, 173 App. Div. 719, 159 N. Y. Supp. 1027; *Cortelyou* v. *Van Brundt*, 2 Johns. (N. Y.) 357, 3 Am. Dec. 439; *Lay* v. *King*, 5 Day (Conn.), 72; *Eagle Cliff Fishing Co.* v. *Mc-Gowan*, 70 Or. 1, 137 Pac. 766; *Sherwood* v. *Stephens*, 13 Idaho, 399, 90 Pac. 345; 26 C. J. 598, note 54; *Griffith* v. *Holman*, 23 Wash. 347, 83 Am. St. Rep. 821, 54 L. R. A. 178, 63 Pac. 239; *Knudsen* v. *Hull*, 46 Utah, 114, 148 Pac. 1070; *State* v. *Mallory*, 73 Ark. 236, 3 Ann. Cas. 852, 67 L. R. A. 773, 83 S. W. 955; *State* v. *Rodman*, 58 Minn. 393, 59 N. W. 1098; *State* v. *Roberts*, 59 N. H. 484; *Murphy* v. *Hitchcock*, 22 Hawaii, 665, Ann. Cas. 1917B, 976; *Fin & Feather Club* v. *Thomas* (Tex. Civ. App.), 138 S. W. 150.

## STATEMENT OF THE CASE BY THE JUSTICE DELIVERING THE OPINION.

The complaint contains eight causes of action, in the first of which the plaintiff alleges himself to be the owner in fee, and in the actual possession of a large tract of land in Lewis and Clark county, abutting for several miles on both sides of the Missouri River, a nontidal but navigable stream. It is then alleged that about the 18th of September, 1924, the defendant being engaged on a fishing and hunting expedition, rowed a boat down the channel of the stream between plaintiff's lands "abutting on each side thereof, and intermittently cast for and caught fish in said channel, shot at and killed wild ducks floating thereon or in flight thereover, in violation of plaintiff's right of possession and control of the channel of said stream, to plaintiff's damage in the sum of $10"; that on that day and while on said fishing and hunting expedition the defendant rowed the boat to the west bank of the stream and there moored the same above the ordinary low-water mark of the stream and thereafter while fishing in the river "walked and tramped along said bank on the land of plaintiff, above the ordinary low-water mark and in and

above the ordinary high-water mark, and between said water marks, tramped upon and destroyed native and planted grasses upon said land,'' in violation of plaintiff's right and to his damage.

In the second cause of action plaintiff alleges his ownership and actual possession of what he terms his "home ranch," which ranch is devoted to the raising of hay and grain and the breeding and raising of sheep and cattle. There flows through this ranch a small unnavigable stream known as Fall Creek, about fifteen feet in width and about two feet deep, which stream is inhabited by game fish; that on or about the 3d of August, 1924, the defendant entered the stream at its mouth, where it empties into the Missouri River, "and waded up and down the same fishing with a line and rod, in violation of plaintiff's right to the undisturbed, peaceful, and exclusive enjoyment of said stream for fishing and other purposes, to plaintiff's damage in the sum of $10''; and when not wading in the channel of the stream the defendant walked up and down the banks thereof, tramping on and destroying hay growing on said banks, and breaking and cutting willows growing along the banks, to plaintiff's damage.

The third cause of action also relates to the home ranch, it being alleged that on the 18th of September, 1924, the defendant, while engaged in hunting ducks and other water fowl and other migratory game birds, and while standing on the lands of another, repeatedly discharged a Winchester shotgun at water fowl in flight over plaintiff's said premises, dwelling-house and over his cattle, "thereby preventing plaintiff from the quiet, undisturbed, peaceful enjoyment of his dwelling-house, ranch and property, to plaintiff's damage in the sum of $10.''

In the fourth cause of action the plaintiff alleges ownership and actual possession of a ranch known as the Sentinel Rock place, which is devoted to the growing of grazing hay and grain and livestock; "that plaintiff has fully inclosed and surrounded said tract of land with a post and barbed-wire fence about five

feet high"; that on or about the 18th of September the said defendant, while hunting and in pursuit of prairie chicken, blue grouse and other upland game birds, and without consent or authority from plaintiff, broke the said fence and entered in and upon the said tract of land and tramped over and across the same, shooting said birds and tramping down and destroying grain standing on said tract awaiting harvest, to plaintiff's damage; that upon leaving said inclosed tract of land the defendant tramped and hunted over an uninclosed and open tract of land belonging to plaintiff, then in plaintiff's possession, and tramped down and destroyed natural grasses growing thereon, fit for grazing of livestock, to plaintiff's damage.

The fifth cause of action likewise relates to the Sentinel Rock ranch, which the plaintiff alleges is inclosed on three sides by a barbed wire and post fence five feet high and he has posted upon said fence and upon said land at the boundary thereof, in conspicuous places, printed and painted signs and warnings in the English language, reading as follows, "No hunting allowed on these premises," or, "No trespassing allowed on these premises"; that notwithstanding said inclosure and fence and warnings so posted, the defendant, while hunting and in the pursuit of upland game birds, and on the 18th of September, 1924, broke, cut and tore down a panel of fence and entered in and upon the said inclosed land and tramped and destroyed grain and grasses standing thereon, to plaintiff's damage.

In the sixth cause of action it is alleged that there is a tract of open public domain lying on the east of the Sentinel Rock ranch, which consists of a hilly and mountainous grazing country, frequented and inhabited by upland game birds and there is no way of reaching the same except across said ranch, and that on the 19th of September, 1924, the defendant broke the fence surrounding and entered upon the Sentinel Rock ranch and walked upon and over the same for the purpose of entering upon the said public domain and in so doing he

tramped upon hay growing on the ranch and destroyed the same, to plaintiff's damage.

In the seventh cause of action it is asserted that plaintiff is and at all times mentioned in the complaint was the owner and in the actual possession of a tract of land "entirely surrounding a small pond and a small stream flowing therein and a small stream flowing from said pond; that said pond and the stream serving the same are frequented and inhabited by native mountain trout and other game fish, fed and protected by plaintiff"; that on the third day of August, 1924, and while engaged in fishing, the defendant, with rod, line and bait angled in said pond and streams and caught and carried away and converted to his own use a great number of fish, to plaintiff's damage.

In the eighth cause of action the plaintiff alleges that during the year 1924 certain migratory and wild game birds, to-wit, canvas-back and teal ducks, laid their eggs in irrigating and other ditches and watercourses on plaintiff's home ranch and there hatched and raised their young; that plaintiff protected the game birds by killing predatory animals which are accustomed to attack the same, and by throwing out grain for food, and the ducks frequented and stayed in and around the watercourses on plaintiff's lands during the year 1924; that on or about the 18th of September, 1924, the defendant entered upon plaintiff's land and by shooting with a shotgun suitable for the hunting of ducks, frightened them into a flight and while they were in flight shot and killed a number of them which he seized, carried away and converted to his own use, to plaintiff's damage.

After defendant's general demurrer to the several causes of action was overruled he declined to answer and his default was entered. Upon the suggestion of counsel for plaintiff that only nominal damages would be demanded, the court rendered judgment in favor of the plaintiff for damages in the sum of $1 upon the eight causes of action collectively, with

costs of the action. From this judgment the defendant has appealed.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

1. First cause of action. At the outset it is conceded that the Missouri River is a navigable stream; also that the plaintiff does not own any land beyond low-water mark. Nevertheless he claims that as he exercises complete dominion to the low-water mark on both sides of the stream, as an incident to that right he may control the use of the channel of the stream for all purposes except navigation. This right, he says, is based upon the common law of England; that law "so far as it is not repugnant to or inconsistent with the Constitution of the United States or the Constitution or laws of this state, or of the Codes, is the rule of decision in all the **[1]** courts of this state." (Sec. 5672, Revised Codes 1921.) The common law of England means that body of jurisprudence as applied and modified by the courts of this country up to the time it became a rule of decision in this commonwealth; that time began with our first territorial legislature. (*Aetna Accident & Liability Co.* v. *Miller*, 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760; *Gas Products Co.* v. *Rankin*, 63 Mont. 372, 24 A. L. R. 294, 207 Pac. 993; *State ex rel. Ford* v. *Young*, 54 Mont. 401, 170 Pac. 947.)

At an early date in England title to the land beneath the sea and tidal rivers was conceived to be in the king, whereas title to the land under inland waters where the tide did not ebb and flow was in the private riparian proprietors. Originally the right to fish in the sea and tidal rivers was held to be the exclusive prerogative of the king as lord of the soil (Royal Fishery of the Banne, Davies Rep. 149; Hale, De Juris Maris, 18), but by a process of legal evolution this right came to be regarded as held in trust for the public; and the general rule now is that in tidal waters all have an equal right to fish. In nontidal streams the exclusive right of fishery is in the

riparian proprietors of the soil. (See 27 Harvard Law Review, 750; 2 Farnham on Waters, sec. 368; note to *Willow River Club* v. *Wade,* 42 L. R. A. 305.) The real distinction between the two classes of streams, tidal and nontidal, seems to rest upon the ownership of the bed or channel of the stream. In all salt-water streams, subject to the action of the tides, the king not only owned the bed or channel of the stream but had exclusive title in and jurisdiction over them for all purposes not inconsistent with navigation, while in fresh-water streams the riparian owner had certain special privileges of which the king could not deprive him. (1 Wood on Nuisances, 3d ed., sec. 452; *Griffith* v. *Holman,* 23 Wash. 347, 83 Am. St. Rep. 821, 54 L. R. A. 178, 63 Pac. 239.)

Broadly speaking, the rule in this country has been that the right of fishing in all waters, the title to which is in the public, belongs to all the people in common. (Farnham on Waters, sec. 368a; *Legoe* v. *Chicago Fishing Co.,* 24 Wash. 175, 64 Pac. 141; *Coolidge* v. *Williams,* 4 Mass. 140; *Lincoln* v. *Davis,* 53 Mich. 375, 51 Am. Rep. 116, 19 N. W. 103.)

The state of Montana is the owner of all land below the water of a navigable stream. (Sec. 6674, Rev. Codes 1921; *Port of Seattle* v. *Oregon, W. R. R. Co.,* 255 U. S. 57, 65 L. Ed. 500, 41 Sup. Ct. Rep. 237; *Shiveley* v. *Bowlby,* 152 U. S. 1, 38 L. Ed. 331, 14 Sup. Ct. Rep. 548; *Hume* v. *Rogue River Packing Co.,* 51 Or. 237, 131 Am. St. Rep. 732, 92 Pac. 1065.) The words "all land" in section 6674 evidently refer to that below the low-water mark, for in section 6771 it is provided that "except where the grant under which the land is held indicates a different intent, the owner of the land, when it borders upon a navigable lake or stream, takes to the edge of the lake or stream at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream." (And see *Gibson* v. *Kelly,* 15 Mont. [2] 417, 39 Pac. 517.) Perforce, then, the waters above the bed or channel of a navigable stream at low-water mark are public waters and in this the public have a right to fish, ex-

cept as restrained by the general law. (Tiffany on Real Property, sec. 309.) In rowing his boat upon the river and fishing therein the defendant was well within his rights. He also had the right to shoot wild ducks upon the surface of the stream or flying thereover, if he did not trespass upon the plaintiff's adjacent property.

While plaintiff's position that he may control the use of the [3] channel for any purposes is untenable, still he may maintain his first cause of action, for the defendant went upon the land of plaintiff "above the ordinary low-water mark and in and above the ordinary high-water mark and between said water marks," and tramped upon and destroyed native and planted grasses upon said land. In going upon plaintiff's land in the fashion described, the defendant was a trespasser. (*Bickel* v. *Polk*, 5 Harr. (Del.) 325; *Gould* v. *Hudson River R. R. Co.*, 6 N. Y. 522.)

The court, in *Albright* v. *Cortright*, 64 N. J. L. 330, 81 Am. St. Rep. 504, 48 L. R. A. 616, 45 Atl. 634, observed: "In country life a multitude of acts are habitually committed that are technically trespasses. Persons walk, catch fish, pick berries and gather nuts *in alieno solo* [on another's land], without strict right. Good-natured owners tolerate these practices until they become annoying or injurious, and then put a stop to them."

2. The defendant trespassed also when he waded up and [4] down Fall Creek fishing. The channel of the creek belonged to the plaintiff (1 Tiffany on Real Property, sec. 302), and while the plaintiff did not own the fish, *ferae naturae*, he had the exclusive right to fish for them while they were in the waters of Fall Creek within his land. (26 C. J. 598.) It would seem clear that a man has no right to fish where he has no right to be. So it is held uniformly that the public have no right to fish in a non-navigable body of water, the bed of which is owned privately. (16 Mich. Law Review, 37; *Baylor* v. *Decker*, 133 Pa. 168, 19 Atl. 351; *State* v. *Theriault*, 70 Vt. 617, 67 Am. St. Rep. 695, 43 L. R. A. 290, 41 Atl.

1030.) That defendant entered Fall Creek from the navigable Missouri of course is of no importance. (*Knudson* v. *Hull,* 46 Utah, 114, 148 Pac. 1070.)

Likewise the plaintiff trespassed when he tramped upon and destroyed the hay and broke and cut the willows growing upon the banks of the stream.

3. It must be held that when the defendant, although stand-[5] ing upon the land of another, fired a shotgun over plaintiff's premises, dwelling and cattle, he interfered with "the quiet, undisturbed, peaceful enjoyment" of the plaintiff, and thus committed a technical trespass at least. The plaintiff was the owner of the land. Land, says Blackstone, in its legal signification has an indefinite extent, upwards as well as downwards: whoever owns the land possesses all the space upwards to an indefinite extent; such is the maxim of the law. (Cooley's Blackstone, Book II, 18; vol. 1, 445; Kent's Commentaries, 401.)

The court of appeals of New York, in *Butler* v. *Frontier Telephone Co.,* 186 N. Y. 486, 116 Am. St. Rep. 563, 9 Ann. Cas. 858, 11 L. R. A. (n. s.) 920, 79 N. E. 716, had before it an ejectment case in which wire, unsupported by any structure resting upon plaintiff's land, was strung over the surface of the ground at a height of from twenty to thirty feet across the entire width of plaintiff's premises. In speaking of the extent of the operation of the ancient maxim quoted above the court said: "The surface of the ground is a guide, but not the full measure, for within reasonable limitations land includes not only the surface but also the space above and the part beneath. (Co. Litt. 4a; 2 Blackstone's Com. 18; 3 Kent's Com., 14th ed., *401.) '*Usque ad coelum*' is the upper boundary, and while this may not be taken too literally, there is no limitation within the bounds of any structure yet erected by man. So far as the case before us is concerned, the plaintiff as the owner of the soil owned upward to an indefinite extent."

Sir Frederick Pollock, in the tenth edition of his valuable work on Torts, page 363, observes that it has been doubted

whether it is a trespass to pass over land without touching the soil, as one may in a balloon, or to cause a material object, as a shot fired from a gun, to pass over it. "Lord Ellensborough thought it was not in itself a trespass to 'interfere with the column of air superincumbent upon the close,' and that the remedy would be by action on the case for any actual damage: though he had no difficulty in holding that a man is a trespasser who fires a gun on his own land so that the shot fall on his neighbor's land"—citing *Pickering* v. *Rudd,* 4 Camp. 219–221, 16 R. R. 777.

Fifty years later, says Pollock (page 364), "Lord Blackburn inclined to think differently (*Kenyon* v. *Hart,* 6 B. & S. 249, 252, 34 L. J. M. C87, 11 Law Times, 733), and his opinion seems the better." Continuing he observes: "As regards shooting it would be strange if we could object to shots being fired point blank across our land only in the event of actual injury being caused, and the passage of the foreign object in the air above our soil being thus a mere incident and a distinct trespass to person or property." But he concludes that when one takes into account the extreme flight of projectiles fired from modern artillery which may pass thousands of feet above the land, the subject is not without difficulty. That shortly it will become one of considerable importance is indicated by the rapid approach of the airplane as an instrumentality of commerce, as is suggested in a valuable note found in 32 Harvard Law Review, 569. However, it seems to be the consensus of the holdings of the courts in this country that the air space, at least near the ground, is almost as inviolable as the soil itself. (*Id.; Harrington* v. *McCarthy,* 169 Mass. 492, 61 Am. St. Rep. 298, 48 N. E. 278.) It is a matter of common knowledge that the shotgun is a firearm of short range. To be subjected to the danger incident to and reasonably to be anticipated from the firing of this weapon at water fowl in flight over one's dwelling-house and cattle would seem to be far from inconsequential, and, while plaintiff's allegations are very general in

character, it cannot be said that a cause of action is not stated for nominal damages at least.

4. The fourth and fifth causes of action may be considered [6, 7] together, as they involve practically the same state of facts, except that in the latter the fence which the defendant is alleged to have torn down had posted upon it signs warning persons against hunting or trespassing on the premises.

Beyond question, whenever land is inclosed, a person who hunts or fishes thereon without the consent of the person entitled to the possession thereof is a trespasser. The exclusive right of hunting or fishing on land owned by a private individual is in the owner of the land, or in those who have a right to be there by his permission, as his guests, or by his grant. (27 C. J. 943; *Shulte* v. *Warren,* 218 Ill. 108, 13 L. R. A. (n. s.) 745, 75 N. E. 783.) The fact that all have the right to hunt and take such game as is allowed by statute upon the public domain does not warrant one in entering upon privately inclosed lands for that purpose. Said Mr. Justice Champlin in *Sterling* v. *Jackson,* 69 Mich. 488, 13 Am. St. Rep. 405, 37 N. W. 845: "Since every person has the right of exclusive dominion as to the lawful use of the soil owned by him, no man can hunt or sport upon another's land but by consent of the owner. It will be conceded that the owner of lands in this state has the exclusive right of hunting and sporting upon his own soil. Whatever may be the view entertained when the land belongs to the United States or to the state, there can be no question when the land passes to the hands of private owners."

It follows that the owner has a right to recover damages from those who trespass. And under the provisions of section 11482, Revised Codes of 1921, when the owner posts his land warning persons that they may not hunt or trespass thereon, and they do hunt or trespass within the prohibitions of that section, they are subject to criminal prosecution. So much of that section as is pertinent here provides that any person

who shall hunt upon any inclosed land or premises where there is posted in a conspicuous place a sign or warning reading, "No hunting allowed on these premises," or a sign or warning reading, "No trespassing allowed on these premises," without the consent of the owner, shall be guilty of a misdemeanor, etc.

5. The sixth cause of action may be sustained by the allegation that defendant broke the fence surrounding and entered upon the Sentinel Rock ranch. That the defendant had the right to hunt upon the public domain lying easterly of the Sentinel Rock ranch must be conceded. If it be conceded also that by reason of the fact that he had no way of reaching the public land except by going across plaintiff's ranch and therefore the law provided for him a way by necessity under the doctrine laid down in *Herrin* v. *Sieben*, 46 Mont. 226, 127 Pac. 323, the defendant has not shown that he availed himself of his remedy. If he were entitled to the privilege he should first have asked the plaintiff to designate the track or way to be pursued across the land, and then if the plaintiff failed or refused to designate the track or way the defendant might have made his own selection, with the restriction that he could not lawfully encroach upon the land of the plaintiff further than circumstances rendered necessary. (*Herrin* v. *Sieben, supra.*)

6. Much that is said with respect to the second cause of action is applicable to the seventh. In this cause of action it appears that the defendant entered upon the land of the plaintiff which entirely surrounded a small pond and a small stream flowing therein and a small stream flowing from said pond; these being frequented and inhabited by native mountain trout and other game fish, fed and protected by the plaintiff. The defendant did not have any right to enter upon the plaintiff's lands or to take fish from the pond or streams, for the right to fish for them belonged exclusively to the owner of the soil or those in privity with him. (26 C. J. 597; *Lembeck*

v. *Nye,* 47 Ohio St. 336, 21 Am. St. Rep. 828, 8 L. R. A. 578, 24 N. E. 686.)   We need go no further.

7. Eighth cause of action.   The wild game in this state be- [10] longs to the people in their sovereign capacity and it is not subject to private dominion to any greater extent than the people through the legislature have seen fit to prescribe. (*Ex parte Maier,* 103 Cal. 476, 42 Am. St. Rep. 129, 37 Pac. 402; *Geer* v. *Connecticut,* 161 U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. Rep. 600.)

Section 6665, Revised Codes of 1921, declares: "Animals [11] wild by nature are the subjects of ownership, while living, only when on the land of the person claiming them, or when tamed, or taken or held in the possession, or disabled and immediately pursued." Considering an identical statute with reference to the right of a person entitled to the possession of land upon and from which trespassers had killed and taken away wild ducks, the supreme court of California, speaking through Mr. Justice Van Fleet, said under this statute an individual is as much to be protected in the enjoyment of his rights in this species of property as in any other under the law. "While these wild birds, therefore, are within the plaintiff's inclosure, he has under this statute such right in them as entitle him to protect them from invasion by those not authorized to be there, and any person violating such rights is as much a trespasser as though entering unbidden the plaintiff's dwelling." (*Kellogg* v. *King,* 114 Cal. 378, 55 Am. St. Rep. 74, 46 Pac. 166.)

In *State* v. *Mallory,* 73 Ark. 236, 3 Ann. Cas. 852, 67 L. R. A. 773, 83 S. W. 955, it is held that when wild game or fowl are upon the private grounds of an individual, a qualified right of property in the individual attaches to it, with the exclusive right to hunt, kill and capture it.   (And see *Shulte* v. *Warren, supra.*)

Whether or not the plaintiff under his pleading may assert a qualified ownership in the wild ducks in question, it is clear

that the defendant, a trespasser, had no right to kill or capture them upon the plaintiff's land.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

MR. JUSTICE HOLLOWAY: It is so apparent that the facts stated in each cause of action disclose a technical trespass upon plaintiff's property that, in my judgment, the appeal does not merit serious consideration, but should be disposed of summarily under Rule XVIII of the rules of this court.